UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAVELLE MALONE,

Plaintiff,

v.                                                      CAUSE NO. 3:24-CV-162-PPS-APR

WARDEN ENGLISH, et al.,

Defendants.

OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28

U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary

relief against a defendant who is immune from such relief. To proceed beyond the

pleading stage, a complaint must contain sufficient factual matter to "state a claim that

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints must be given liberal construction.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of

court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th

Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Malone alleges that on November 9, 2023, at approximately 4:30 a.m., he was

subjected to a strip search at the Miami Correctional Facility by Warden English,

Assistant Warden Smith, Correctional Officer Sgt. Mallot, and two John Doe E-squad

Officers. He was ordered to "spread my butt cheeks, squat and cough, and to run my

fingers on the inside of my mouth and lift my tongue." ECF 1 at 3. The search occurred

while he was in the shower, and the officers had their guns drawn. Malone alleges the

strip search was "motivated by a desire to 'harass or humiliate and cause psychological

pain.'" *Id*. He complains there was no warrant issued by a judge to authorize the search.

He has sued the defendants listed above for monetary damages and injunctive relief.

The Seventh Circuit has held that convicted prisoners "maintain a privacy

interest, although diminished, in their bodies" under both the Fourth and Eighth

Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth

and Eighth Amendments have different roles to play with respect to bodily searches

and protect different categories of constitutional rights." *Id*. at 781. In either case,

however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety
> of not only the prison staffs and administrative personnel, but also
> visitors. They are under an obligation to take reasonable measures to
> guarantee the safety of the inmates themselves. They must be ever alert to
> attempts to introduce drugs and other contraband into the premises
> which, we can judicially notice, is one of the most perplexing problems of
> prisons today; they must prevent, so far as possible, the flow of illicit
> weapons into the prison; they must be vigilant to detect escape plots, in
> which drugs or weapons may be involved, before the schemes materialize.

*Id*. at 779 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Fourth Amendment recognizes the interplay between the inmate's privacy

interest and institutional concerns, and "thus protects prisoners from searches that may

be related to or serve some institutional objective, but where guards nevertheless

2

perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id*. at 781. When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id*. at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*.

The following situations have been recognized as reasonable because the level of intrusion did not outweigh the purported justification—conducting thorough searches as part of the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoner left or returned to maximum security unit. *Id*. at 783–84 (collecting cases). In general, courts must consider whether the searches were unreasonable in light of: (1) the scope of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id*. at 784 (quoting *Bell*, 414 U.S. at 559). For claims brought under the Eighth Amendment, on the other hand, there is a heightened subjective intent requirement. *Id*. at 780. This is because the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id*. at 781.

Malone provides only vague details about the strip search itself and no details about what prompted it. He concludes that it was "motivated by a desire to harass or humiliate and cause psychological pain," but he doesn't provide any facts to plausibly support that assertion. Accordingly, based on the sparse facts presented in the complaint, I can't find the search violated the Constitution. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

Malone also claims the defendants were deliberately indifferent following the search when they placed him in a cell without a blanket, sheets, or a mattress, while wearing only his boxer shorts and a t-shirt. He claims the vent was blowing cold air that felt like it was 45 degrees. The cell did not have a working sink or a working toilet. He told one of the John Doe E-squad officers about the sink and toilet, but he was ignored. He was made to "sit and lay down on a steel bunk for eight (8) hours." *Id*. at. 4.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337,

4

349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (internal quotation marks and citation omitted). Amorphous claims about "overall conditions" do not "rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* (internal quotations marks and citation omitted). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Here, I find Malone's allegations are insufficient to suggest the defendants violated his constitutional rights. He was placed in the cell for a period of eight hours following the search during the morning and afternoon hours of the day. Historical data

shows the weather was relatively mild near Bunker Hill, Indiana on the date in question.[1] Although he claims the vent blew cold air on him and that he wasn't provided with bedding, this situation occurred in the morning to early afternoon hours, so it's not reasonable to infer his sleep was disturbed. It's true that "prisoners have a right to protection from extreme cold" *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), but Malone hasn't described the sort of extreme deprivation necessary to trigger Eighth Amendment protection. *See id*. at 643 ("Moreover, it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional."). The same is true of Malone's allegation that the cell lacked a sink and working toilet. *See e.g., Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (noting that the Eighth Amendment is violated where prisoners are deprived of "running water only in extreme circumstances"); *see also Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) ("[t]emporary lack of toilet access is not cruel and unusual punishment"); *White v. Knight*, 710 F. App'x 260, 261–62 (7th Cir. 2018) (While "long-term deprivations of modern toilet facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]"do not.). Overall, the complaint doesn't plausibly describe conditions to suggest Malone was knowingly or intentionally deprived of the minimal civilized measure of life's necessities. *See, e.g., Gray*, 826 F.3d at 1005 (noting that "[a]n adverse condition of confinement, if endured over a significant

---

[1] The low temperature during the relevant hours was approximately 46 degrees, and the high temperature was 57 degrees. *See* https://www.wunderground.com/history/daily/us/in/west-lafayette/KLAF/date/2023-11-9 (last visited Apr. 30, 2024).

time, can become an Eighth Amendment violation *even if it would not be impermissible if it were only a short-term problem*") (emphasis added).

This complaint does not state any claims for which relief can be granted. Nevertheless, Malone may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes that form.

Accordingly:

(1) Lavelle Malone is GRANTED until **June 3, 2024**, to file an amended complaint; and

(2) Lavelle Malone is CAUTIONED that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

SO ORDERED.

ENTERED:  May 6, 2024.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT