UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAVELLE MALONE,

    Plaintiff,

    v.   CAUSE NO. 3:24-CV-162-PPS-APR

MACKENZIE MALLOTT, et al.,

    Defendants.

## OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, filed a second amended complaint. ECF 19. Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Malone alleges that on November 9, 2023, at approximately 4:30 A.M., he was subjected to a strip search at the Miami Correctional Facility. He claims Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson pointed "pepper ball guns," "pepper canister guns," and Tasers at him in a threatening manner as he and other inmates from his range walked to the shower. ECF 19 at 2. When they arrived, Lieutenant Ornelas and Sergeant Watson ordered Malone to strip naked and told him to "open my mouth, lift my tongue, run my fingers behind my ears, [and] lift my genitals and balls." *Id*. at 2. They called him a "gay boy" and ordered him to "squat, spread your ass cheeks, and cough." *Id*. Malone claims there was no current riot or other disturbance to justify the search. Rather, the officers did so to harass and/or punish the inmates for "acting up." *Id*. During the search, the officers repeatedly stated, "[Y]ou guys want to act like animals, we will treat you like animals." *Id*. at 3. Malone has sued Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson for monetary damages.

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under both the Fourth and Eighth Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights." *Id*. at 781. In either case, however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to

2

>   attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id.* at 779 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id.* at 781. When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id.* at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.*

The following situations have been recognized as reasonable because the level of intrusion did not outweigh the purported justification—conducting thorough searches as part of the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoners left or returned to maximum security unit. *Id.* at 783–84 (collecting cases). In general, courts must consider whether the searches were unreasonable in light of: (1) the scope

3

of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id*. at 784 (quoting *Bell*, 414 U.S. at 559). For claims brought under the Eighth Amendment, on the other hand, there is a heightened subjective intent requirement. *Id*. at 780. This is because the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id*. at 781.

Malone's claims arise under the Fourth and Eighth Amendments.[1] He alleges the officers subjected him to the strip search to harass and punish him for the behavior of other prisoners. Although further investigation may reveal the actions of the officers were constitutional under the circumstances, giving Malone the benefit of the inferences to which he is entitled at this stage, he has stated plausible claims against Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson for conducting the strip search. *See e.g.*, *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) ("[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional.") (internal quotation marks and citation omitted)).

Malone also alleges he was "paraded in front of cameras, body cameras, and female staff and officers in my boxer shorts/underwear in violation of my religious beliefs." ECF 19 at 3. He points to Indiana Department of Correction Policy that states he "must be covered from the navel to the knees" because he is a Muslim. *Id*.

---

[1] Malone mentions the Fourteenth Amendment, but nothing in his complaint suggests the Fourteenth Amendment would apply to his claims. *See generally Henry*, 969 F.3d at 776–82 (discussing the Fourth and Eighth Amendment standards as applied to strip searches).

4

These vague allegations are insufficient to state a claim. Malone doesn't state who did the "parading," when it occurred, where he was taken to and/or from, or how long it lasted. "[I]ncidental observations of undressed inmates—particularly ones that are infrequent or at a distance—that are inherent to the continuous surveillance necessary in prisons are almost always reasonable." *Henry*, 969 F.3d at 784; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original); *Burks*, 555 F.3d at 596 ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Moreover, regarding the alleged Indiana Department of Correction Policy requiring all Muslims to be covered from "the naval to the knees," departmental policy violations do not amount to constitutional violations. *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 F. App'x 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). Therefore, these claims will be dismissed.

Accordingly:

(1) Lavelle Malone is GRANTED leave to proceed against Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson in their individual capacities for monetary damages for subjecting him to an unconstitutional strip search on November 9, 2023, at approximately 4:30 A.M., in violation of the Fourth and/or Eighth Amendments;

(2) All other claims are DISMISSED;

(3) The clerk is DIRECTED, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson at the Indiana Department of Correction with a copy of this order and the second amended complaint (ECF 19);

(4) The Indiana Department of Correction is ORDERED to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(5) Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson are ORDERED, under 42 U.S.C. § 1997e(g)(2), to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

ENTERED: August 14, 2024.

    /s/   Philip P. Simon
    PHILIP P. SIMON, JUDGE
    UNITED STATES DISTRICT COURT