UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAVELLE MALONE,

    Plaintiff,

    v.     CAUSE NO. 3:24-CV-162

MACKENZIE MALLOTT, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 68] filed by Defendants on July 16, 2025. For the reasons set forth below, the Motion [DE 68] is **GRANTED**.

The plaintiff, Lavelle Malone, is proceeding *pro se* in this case "against Correctional Officer Sergeant MacKenzie Mallott, Lieutenant Sonney Ornelas, and Sergeant James Watson in their individual capacities for monetary damages for subjecting him to an unconstitutional strip search on November 9, 2023, at approximately 4:30 A.M., in violation of the Fourth and/or Eighth Amendments[.]" [DE 23, p. 6]. Malone filed his Response on September 3, 2025. [DE 83]. Defendants did not file a reply, and the time to do so has passed.[1]

---

[1] After Malone filed his response brief, he filed a motion to strike Defendants' statement of material facts. [DE 84]. The court denied this motion and granted Malone until October 20, 2025, to file a replacement response brief if he desired. [DE 85]. Malone did not file any replacement response brief by the deadline. On November 7, 2025, Malone filed a "Statement of Material Facts in Dispute," which reiterates the allegations in his original response brief and contains no new information. [DE 86]. Defendants then filed a motion asking the court to either strike Malone's "Statement of Material Facts in Dispute" as untimely or, in the alternative, to grant them time to file a reply. [DE 87]. It is unclear whether Malone intended his "Statement of Material Facts in Dispute" to be a replacement response brief, or whether he intended it

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. [DE 19]. As a result, this court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

*Discussion*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary

---

only to supplement his initial response brief, which did not include a statement of material facts. Regardless, the court has reviewed the contents of Malone's "Statement of Material Facts in Dispute," and concludes it contains no new information that would impact the disposition of this case. Therefore, it is unnecessary to strike the filing or to grant Defendants time to file a reply. Defendants' Motion to Strike [DE 87] will be denied, and the court will consider both Malone's initial response brief [DE 83] and his "Statement of Material Facts in Dispute" [DE 86] in ruling on the summary judgment motion.

judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under both the Fourth and Eighth Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights." *Id*. at 781. In either case, however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id*. at 779 (*quoting Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id*. at 781. When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id*. at 783 (*quoting Bell v. Wolfish*, 441 U.S. 520,

547 (1979)). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.*

Similarly, "[s]trip-searching a prisoner violates the Eighth Amendment only if it is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'" *Jones v. Anderson*, 116 F.4th 669, 678 (7th Cir. 2024) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)); *see also King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (noting that strip searches can violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification, such as a need for order and security). "To overcome summary judgment," the plaintiff must "produce evidence showing that the officers conducted the search in a harassing manner intended to 'humiliate and inflict psychological pain.'" *Jones*, 116 F.4th at 678.

Defendants provide their own affidavits, in which they attest to the following facts: During all relevant times, Sgt. Malott was assigned as the Emergency Squad ("E-squad") leader at Miami Correctional Facility ("MCF"). [DE 68-3]. At MCF, like other facilities within IDOC, there are mass searches, referred to as "shakedowns," which occur whenever necessary. *Id.* Mass searches involve searches of inmates' cells and their persons with the intent to locate contraband. *Id.* at 2. For example, a mass search may be conducted to find weapons within inmates' cells or on their persons to prevent or mitigate future violent acts against staff or between inmates. *Id.* Therefore, mass searches are an essential function at MCF. *Id.*

During mass searches, the E-squad often has to perform a strip search of each inmate on the range. [DE 68-3]. Specifically, while prison staff search the cells of an entire range, the E-squad will transport the inmates to a different area, either a gymnasium or empty cells on a different range, where they can wait as the search progresses. *Id.* at 2. The E-squad will then perform a strip search of each inmate on the range. *Id.* at 3. Strip searches often occur at the showers of a cell house, as the showers typically include individual stalls where inmates may have their bodies and clothes searched in privacy. *Id*. Strip search procedure typically includes the following: the inmate's clothing is removed, given to correctional staff and searched; the inmate is made to open his mouth to be looked at by staff; the inmate is made to run his fingers through his hair; and the inmate is made to bend over at the waist and spread, with his rear facing the staff. *Id*. This is done to ensure contraband is not intentionally or incidentally placed on or within the inmate's clothes or body, including his mouth and anal cavity. *Id.* Typically, two E-squad members will be present directly in front of the shower stall to search the inmate standing within. *Id.* Correctional officers participating in a mass search typically possess devices to suppress or incapacitate inmates, such as tasers or pepper ball guns, but will not raise those devices unless an incident arises that necessitates their usage. *Id.*

Mass searches occur periodically around MCF, multiple times per year, and typically involve hundreds of inmates. [DE 68-3; DE 68-4]. On November 9, 2023, a mass search occurred in MCF's K-house, which involved the routine strip search of numerous inmates. *Id.* Sgt. Malott was the E-squad leader for the November 9 mass

5

search, and both Lt. Ornelas and Sgt. Watson participated in the mass search. [DE 68-3; DE 68-4; DE 68-5]. The inmates from K-house, including Malone and his cellmate, were escorted to the N-house where they were subjected to strip searches in the N-house's shower stalls. [DE 68-3, p. 4-5]. None of the defendants specifically recall searching Malone on that occasion, but they provide camera footage depicting the search. [DE 68-3; DE 68-4; DE 68-5].

The camera footage shows the following: At around 9:14:00 a.m. in the video, Malone and his cellmate are removed from a cell by Lt. Ornelas and Sgt. Watson and escorted to nearby shower stalls. [DE 82]. Two unidentified correctional officers are standing nearby with pepper ball guns, but neither correctional officer raises his weapon or points it at either of the inmates. *Id.* At 9:14:25 a.m. in the video, Malone arrives at the shower stall and is subjected to a strip search outside of the view of the camera. *Id.* Both Lt. Ornelas and Sgt. Watson can be seen at all times on the camera, but Malone is concealed in the shower stall. *Id.* Approximately two minutes later, at 9:16:25 a.m., Malone exits the stall and is escorted back to a cell. *Id.* Because neither party disputes these facts, the court accepts them as undisputed.[2]

Defendants argue summary judgment is warranted in their favor because the strip search was done pursuant to justifiable penological interests and was not abusive or maliciously motivated and, regardless, they are entitled to qualified immunity. [DE

---

[2] Defendants also provided some sealed documents in support of their summary judgment motion. [DE 75]. Malone argues that, because he was not permitted to view these sealed documents, he cannot adequately answer Defendants' statement of material facts. [DE 86-2]. The court did not consider Defendants' sealed documents in ruling on their motion for summary judgment.

6

76. In his Response [DE 83], Malone argues the strip search was abusive and maliciously motivated for three reasons.

First, Malone attests Defendants pointed pepper ball guns and tasers at him in a threatening manner as he was walked to the shower. [DE 83-1]. The video footage does not corroborate that description. Two unidentified correctional officers are standing nearby with weapons, but neither correctional officer points a weapon at Malone, and none of the defendants ever holds any weapon or points any weapon at Malone. [DE 82]. Therefore, no reasonable jury could conclude Defendants pointed weapons at Malone as he was walked to the shower. *See Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (when "the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape.").

Second, Malone attests there was no current riot or other disturbance to justify the search, and Defendants conducted the search to punish the inmates for "acting up." [DE 83-1]. Defendants attest they performed the strip searches pursuant to a routine mass search intended to remove contraband and ensure the safety and security of the prison facility, and Malone provides no evidence disputing these attestations. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (noting the safety and security of the prison facility are legitimate penological objectives). While Malone alleges that Defendants wanted to punish him because inmates were "acting up," he does not explain or cite to any evidence in support of this assertion. Specifically, Malone does not describe or cite to any evidence demonstrating how he or other inmates were "acting up." He does not

7

even allege or cite to any evidence that he had any prior interactions with any of the defendants before the strip search.[3] Therefore, Malone's vague assertion that Defendants wanted to punish him for "acting up" is insufficient to dispute Defendants' attestations that the searches were conducted pursuant to a routine mass search which was necessary to ensure the safety and security of the prison facility. *See Gabrielle M. v. Park Forest-Chi. Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"); *Sommerfield v. City of Chi.*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (cleaned up).

Third, Malone attests Lt. Ornelas and Sgt. Wilson made derogatory comments to him during the strip search by calling him a "gay boy," ordering him to "squat, spread your ass cheeks, and cough," and telling him "you guys want to act like animals, we will treat you like animals." [D 83-1]. Verbal harassment, by itself, typically does not violate the Eighth Amendment. *See Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) ("Repugnant words . . . will seldom rise to an Eighth Amendment violation."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Whitman v. Nesic*, 368

---

[3] In his Response, Malone states that he had been strip searched by these Defendants on numerous occasions and suggests that this search was part of a pattern of harassment. [DE 83].

F.3d 931, 935 (7th Cir. 2004) (Evidence that the plaintiff felt humiliated, without more, is insufficient to survive summary judgment); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation."). While derogatory comments like those alleged by Malone can contribute to a finding that a search was conducted in a harassing manner, the Seventh Circuit has never held that derogatory comments alone can transform an otherwise legitimate search into a constitutional violation. *See Del Raine v. Williford*, 32 F.3d 1024, 1040 (7th Cir. 1994) ("Abusiveness occurs when there is evidence of some palpable malevolence attributable to a prison official *exacerbated by* the lack of a justifiable penological objective for the search.") (emphasis added). Accordingly, accepting as true that Lt. Ornelas and Sgt. Wilson made derogatory comments to Malone during the strip search, this verbal harassment alone is insufficient to show Malone's Fourth or Eighth Amendment rights were violated.

Defendants have provided undisputed evidence the November 9 strip search was conducted pursuant to a routine mass search in furtherance of MCF's legitimate penological interest in maintaining the safety and security of the prison facility. In light of this evidence, Malone provides no evidence by which a reasonable jury could conclude the November 9 strip search was unreasonable, illegitimate, or motivated by a desire to harass and humiliate him. *See Henry*, 969 F.3d at 783 ("[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [the need to preserve internal order and maintain institutional security],

9

courts should ordinarily defer to their expert judgment in such matters"); *King*, 781 F.3d at 897 (strip searches can only violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification). Summary judgment is therefore warranted in favor of Defendants.

Alternatively, even assuming a reasonable jury could conclude the strip search violated Malone's Fourth or Eighth Amendment rights, summary judgment still is warranted in favor of Defendants because they are entitled to qualified immunity.

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652). To show that a right is clearly established, the burden is on the plaintiff to "demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). A violation is only clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). "[A] defendant cannot be said to have violated a clearly established right

unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

Here, there is no relevant caselaw holding that a correctional officer can violate an inmate's Fourth or Eighth Amendment rights merely by making derogatory comments during a strip search. Malone argues Defendants are not entitled to qualified immunity because Defendants conducted the strip search to punish him. [DE 83]. As discussed, Malone did not cite to any evidence in support of his contention that Defendants sought to punish him, and his vague assertion that Defendants had a retaliatory motive in sufficient to create a genuine dispute. Therefore, because it was not "clearly established" that making derogatory comments to an inmate during a strip search could violate his Fourth or Eighth Amendment rights, Defendants are entitled to qualified immunity in this case.

In summary, even when viewing the facts in the light most favorable to Malone, no reasonable jury could conclude the strip search performed by Defendants on November 9, 2023, violated Malone's Fourth or Eighth Amendment rights. Alternatively, even if a reasonable jury could find a constitutional violation, summary judgment remains proper in favor of Defendants because they are entitled to qualified immunity.

For these reasons, the court:

(1) **GRANTS** Defendants' Motion for Summary Judgment [DE 68];

(2) **DENIES** Defendants' Motion to Strike Malone's statement of material facts in dispute [DE 87]; and

(3) **DIRECTS** the Clerk to enter judgment in favor of Defendants and against Lavelle Malone. This case is now **CLOSED**.


ENTERED this 17th day of December, 2025.

/s/ Andrew P. Rodovich
United States Magistrate Judge